THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. SOPHIA MEYER, PLAINTIFF IN ERROR.

Argued November 8, 1899—Decided February 26, 1900.

Upon an indictment framed under the provisions of section 119 of the Crimes act of 1898, which charges defendant with using an instrument upon the person of a pregnant woman, with intent to cause her miscarriage, and that defendant's act caused the death of the woman, evidence of the dying declarations of the deceased is inadmissible.

---

On error to Union Sessions.

Before MAGIE, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and LIPPINCOTT.

For the state, *Nicholas C. J. English,* prosecutor of the pleas.

For the plaintiff in error, *Jeremiah A. Kiernan.*

The opinion of the court was delivered by

MAGIE, CHIEF JUSTICE. This writ brings here a conviction upon the first and second counts of an indictment presented against plaintiff in error and tried in the Union Sessions.

These counts are substantially identical and were framed upon the provisions of section 119 of the act entitled "An act for the punishment of crimes," approved June 14th, 1898. *Pamph. L., p.* 827.

Each count charges the accused with using an instrument upon the person of one A. K., a pregnant woman, with intent to cause her miscarriage, and each count asserts that the act thus charged caused the death of A. K.

The sole question raised in the argument was whether it was erroneous to admit in evidence the dying declarations of A. K., as the trial judge did, over the timely objection of the counsel of the accused.

It is not contended that the declarations received in evidence were not made under the apprehension of impending death, but the contention is that, assuming their admissibility in case of an indictment for homicide, they were not admissible upon the trial of an indictment for abortion, although death ensued therefrom.

In *Donnelly* v. *State*, 2 *Dutcher* 601, 617, Mr. Justice Ogden, speaking for the Court of Errors, declares that "such declarations are received as evidence from necessity for furnishing the testimony, which in certain cases is essential to prevent the manslayer from escaping punishment. When a death wound is inflicted in secret, as was done in this case, no person can be expected to speak to the fact except the victim of the violence. His account of the circumstances of his injury given in *articulo mortis*, when intelligibly repeated to the jury, is received by them under the like sanction as all oral testimony is received, the sense of impending death being equivalent to the sanction of an oath. But all statements made by persons on the eve of dissolution do not come within

the exception. The application of it is limited to cases of homicide, ' where the death of the deceased is the subject of the charge, and the circumstances of the death are the subject of the dying declarations.' "

The prosecutor of the pleas concedes this to be the law governing the admission of such declarations, but contends that it applies to and makes them admissible in the present case, because the death of A. K. was the subject of the charge in these counts, and the circumstances of her death were the subject of the dying declarations.

It seems obvious that the Court of Errors did not intend to limit the admissibility of such declarations to cases where the indictment charged a technical homicide, for they lay down a general rule and upon such reasons as make the admissibility of such evidence equally proper upon the trial of any indictment in which the death of a deceased person is an essential ingredient of the crime charged, and such death must be proved to establish the charge.

The question therefore resolves itself into this, do the provisions of section 119 of our present Crimes act make the death of a woman on whom an abortion has been committed, an essential element of the crime declared by that section, when in fact her death has resulted therefrom and the indictment so charges?

The section in question reads thus: "Any person who maliciously or without lawful justification, with intent to cause or procure the miscarriage of a woman then pregnant with child, shall administer to her, prescribe for her, or advise or direct her to take or swallow any poison, drug or medicine or noxious thing; or who maliciously or without lawful justification shall use any instrument or means whatever, with the like intent, shall be guilty of a high misdemeanor, and punished accordingly; and if the woman or child die in consequence thereof, be punished by a fine not exceeding five thousand dollars, or imprisonment at hard labor not exceeding fifteen years, or both."

Provisions similar to those contained in this section were first introduced into our legislation by an act entitled "A further supplement to an act entitled 'An act for the Punishment of Crimes,'" approved March 1st, 1849. *Pamph. L., p.* 266. This act was doubtless passed because of the decision of this court in *State* v. *Cooper,* 2 *Zab.* 52. It was construed and applied in *State* v. *Murphy,* 3 *Dutcher* 112, and the inaptness and lack of precision in its language which was therein pointed out were partly cured by subsequent legislation. The substantial provisions of the act of 1849 have remained upon our statute books and are now reproduced in the section under consideration. See *Crimes Act of* 1874, § 75; *Rev., p.* 240; *Pamph. L.* 1872, *p.* 45; *Pamph. L.* 1881, *p.* 240.

In the original adoption and each successive change of this legislation, the enactment has had a double aspect. In the law of 1849, the criminal act denounced was declared to be a high misdemeanor if the woman died in consequence, but only a misdemeanor if she did not die. The law of 1872 contained like provisions, as also did the revision of 1874 and the law of 1881.

The provisions of section 119 of the present act make the crime in either aspect a high misdemeanor, and, therefore, punishable under the provision of section 217 by a fine not exceeding $3,000, or by imprisonment for a term not exceeding seven years, or both. But it is added that if the woman or child die in consequence of the crime, the punishment may be by fine not exceeding $5,000, or imprisonment not exceeding fifteen years, or both.

By section 75 of the Crimes act of 1874 the punishment in case the woman or child died (in which case the crime was a high misdemeanor), was to be by fine not exceeding $1,000 and imprisonment for a term not less than ten years, while if neither died (in which case the crime was a misdemeanor), the punishment was to be by fine not exceeding $500 and imprisonment for a term not less than two years.

That section was construed in this court in *State* v. *Gedicke,*

14 *Vroom* 86. It was held that an indictment under it need not state whether death had resulted from the abortion charged or not, but in the absence of such a charge the offence declared would be the minor offence and punishable as such. It follows that if the state under that section desired to charge the major offence, the indictment must assert the death. The result reached by the court must have been founded upon a construction of the section which found that the legislature had thereby denounced two distinct offences, one of which it designated as a misdemeanor and visited with a prescribed punishment, and the other of which it designated as a high misdemeanor and visited with a severer punishment.

As the crime denounced by that section and designated as a high misdemeanor only existed in case of the death of either the woman on whom the abortion was committed, or the child, it would seem to follow that death was an element of the crime essential to be averred and proved. In that case the argument in behalf of the state would clearly apply, for the death was thus made a subject of the charge and an essential element of the crime. This would legalize the admissions of dying declarations, upon the conceded principles above stated.

But the revisers of 1898 have abandoned the distinction previously made in respect to the grade of the crime. They denounce a single crime as a high misdemeanor and distinguish the cases when death does or does not ensue, not by the designation of the crime, but only by the punishment which must follow conviction.

The result, in my judgment, is that death is no longer an essential element of the crime, but is to be considered solely with respect to the punishment to be inflicted after conviction.

This result rendered inadmissible the dying declarations of deceased, and the judgment must be reversed.